IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:20-cv-577

| | |
|---|---|
| TIMOTHY KAPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT FOR INJUNCTIVE** |
| FOOD LION, LLC, ) | **RELIEF, DECLARATORY, AND** |
| ) | **OTHER EQUITABLE RELIEF** |
| Defendant. ) | **(JURY TRIAL DEMANDED)** |
| ) | |
| ) | |

COMES NOW Plaintiff Timothy Kapp, by and through his undersigned counsel hereby files this Complaint against Defendant Food Lion LLC ("Food Lion" or "Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

## OVERVIEW OF PLAINTIFF'S CLAIMS

1. Plaintiff is a blind and visually-impaired person[1] who requires screen-reading software to use and comprehend websites, and he brings this civil rights action against Food Lion, a grocery store, for its failure to design, construct, maintain, and operate its website, foodlion.com, related pages, and its online shopping feature (the "website") to be accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

---

[1] Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

1

2. For several years now, the U.S. Department of Justice, the agency with authority to enforce the ADA and promulgate regulations under Title III, has consistently maintained the position that there is a compelling national interest in ensuring that websites comply with the broad mandate of the ADA in order to ensure that disabled persons are not denied the "opportunity to participate and benefit from the goods, services, privileges or advantages afforded to other individuals." *See* STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA, filed in *Gil v. Winn-Dixie Stores, Inc*. (No. 16-CV-23020-RNS) (S.D. Fla 2016).

3. More recently, on September 25, 2018, in a letter to U.S. House of Representative Ted Budd, U.S. Department of Justice Assistant Attorney General Stephen E. Boyd confirmed that public accommodations must make the websites they own, operate, or control equally accessible to individuals with disabilities. Assistant Attorney General Boyd's letter provides:

> The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's Title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[2]

4. In addition to the DOJ's position identified above, as of the filing of this complaint, several places of public accommodation have been subjected to liability under Title III of the ADA for maintaining a website with webpages and hosted content that is inaccessible to persons with visual disabilities such as Plaintiff. One of these defendant companies includes a grocery store chain named Winn Dixie that operates in the southeastern United

---

[2] *See* Letter from Assistant Attorney General Stephen E. Boyd, U.S. Department of Justice, to Congressman Ted Budd, U.S. House of Representatives (Sept. 25, 2018).

States. Defendant has thus received fair notice that its website and related applications must comply with the ADA.[3]

5. Food Lion is a grocery store that operates several physical locations throughout the Southeastern United States that are places of public accommodation under the ADA. U.S.C. § 12181.

6. Defendant operates a website foodlion.com, and is responsible for the policies, practices, and procedures concerning the website's development, its maintenance, and the content which is hosted on it.

7. The claims asserted in this complaint arise out of the inaccessible nature of Defendant's website, which denies Plaintiff the full and equal opportunity to enjoy the services Defendant provides to the general public and its sighted customers.

8. Because Defendant's website is not fully and equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's policies and practices so that its website will become accessible to blind persons like Plaintiff.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, et seq., and 28 U.S.C. § 1332.

---

[3] *See Robles v. Dominos Pizza*, LLC 913 F.3d 898 (9th. Cir. 2019) ("As a preliminary matter, we hold that Domino's has received fair notice that its website and app must comply with the ADA.") *cert. denied*, 589 U.S. _ (Oct. 7, 2019)(No. 18-1539); *see also Gil v. Winn-Dixie Stores*, Inc, 257 F.Supp. 3d 1340 (S.D. Fl. 2017) ("The factual findings demonstrate that Winn-Dixie's website is inaccessible to visually impaired individuals who must use screen reader software. Therefore, Winn-Dixie has violated the ADA because the inaccessibility of its website has denied Gil the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations that Winn-Dixie offers to its sighted customers.").

3

9. This Court has personal jurisdiction over Defendant because it is deemed a resident of the State of North Carolina and it conducts and continues to conduct a substantial and significant amount of business in the State of North Carolina.

10. Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. §1391(b)(1) because Defendant resides in this District and this Court has personal jurisdiction over Defendant.

## PARTIES

11. Plaintiff Timothy Kapp is a resident of the state of North Carolina. He is also a blind, visually-impaired, person and a member of a protected class of individuals under the ADA. Specifically, Plaintiff is substantially limited in performing one or more major life activities; including but not limited to visual perception, walking around stores, and choosing items for purchase.

12. Defendant is a North Carolina domiciled corporation that operates a grocery store business. Defendant also maintains a website with a URL of foodlion.com whose inaccessible design is the subject of this suit.

13. Plaintiff has been denied the full use and enjoyment of the services offered and provided on Defendant's website, and the web accessibility barriers Plaintiff has encountered now deter and obstruct Plaintiff from independently meeting essential shopping needs through foodlion.com.

## FACTS

14. The Internet has become a significant source of information, and essential tool for completing everyday activities such as shopping, learning, and banking, both for sighted and visually-impaired persons alike.

15. When websites are accessible, the Internet provides individuals with disabilities great independence.
16. Blind persons are able to access and consume the content of websites by using their keyboards in conjunction with screen access software that vocalizes the textual and visual information sighted users see on a computer screen. This technology is known as screen-reading software. Except for legally blind individuals whose residual vision allows them to use magnification, screen-reading software is currently the only method a blind person may employ to fully and independently access the internet.
17. Blind and visually-impaired users of computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately.
18. An accessible website should be designed and coded in such a way that a screen reader is able to successfully convert the visual interface (i.e. the text, images, buttons, and links on a webpage) into understandable synthesized speech.
19. For screen-reading software to function, the information on a website must be capable of being rendered into meaningful text. For this to occur, the website's designer must adhere to widely known and achievable programing and design rules. When these standards are not followed, website content will not be capable of being rendered into meaningful text and the user will encounter barriers to operating and navigating the website. Consequently, the visually-impaired user is unable to effectively access the same content available to sighted users and utilize the other functions offered by the website.
20. Screen-reading software is currently the primary method a blind person uses to independently access the internet, websites and other content hosted online.

**Defendant is subject to Title III of the ADA because it operates a place of public accommodation and its website is essential to the range of goods and services Defendant offers to the general public.**

21. The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation provide accessible electronic and information technology as auxiliary aids and services. See 28 C.F.R. §36.303(a), (b) and (c)(ii).

22. Commercial websites that are not accessible for blind individuals using screen-readers and keyboard navigation violate this basic mandate.[4]

23. Defendant is subject to the requirements of Title III of the ADA and its regulations because Food Lion is a "place of public accommodation" under 42 U.S.C. § 12181. Specifically, Defendant's establishments are grocery stores that affect "commerce" and they fall within the scope of 42 U.S.C. § 12181(E) ("a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment").

24. Defendant's website is instrumental in facilitating customer access to the goods, services, and benefits offered at Defendant's physical locations. Key features of Defendant's

---

[4] *See National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006). The Department of Justice (the "DOJ") has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies. *See, e.g.*, Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that Title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). Thus, Defendant is on notice that the ADA's general mandate applies to website design and accessibility.

website allows customers to view pricing information, shop for food online, purchase items, and make arrangements to pick those items up at a certain store location or have them delivered to their homes in certain instances.

25. Online grocery shopping applications have become a common and critical means for the general public to get pricing information and purchase essential goods and services typically only found at grocery stores.

26. With the movement toward online shopping, there are now two ways that the public shops for groceries: (1) in-person or (2) online.

27. The advent of online grocery shopping has already made the day-to-day lives of many members of the general public more convenient.

28. And, due to the spread of COVID-19, a shift by consumers toward more online grocery shopping has potential public health benefits as well.

29. The public health benefits achieved by the nationwide "stay-at-home" orders put in place by state and local governments in the early spring of 2020 only further show the need for a food distribution system that meets consumer demand through a combination of in-person and online grocery shopping.

30. Food Lion's website specifically encourages customers to "Order Your Groceries Online."

31. Online grocery shopping has the potential to make the day-to-day lives of persons with visual impairments more convenient as well, and in light of the current COVID-19 situation, potentially safer from a public health perspective.

32. In light of the foregoing, Defendant's website operates as an essential gateway and an extension of Defendant's physical locations for the general public, and there is a direct nexus between the website foodlion.com and the operation of Defendant's brick-and-mortar

grocery store locations.

33. The Defendant's website is thus subject to regulation under Title III of the ADA because the statute applies to the services of a place of public accommodation, and the implementing DOJ regulations require that a public accommodation "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1) (emphasis added).

**There are inaccessible features and content on Defendant's website that impede access to the goods and services offered by Defendant for blind and low vision customers, including Plaintiff.**

34. Plaintiff has consumed groceries which came from a Food Lion and would like the option to shop online for items and deals that are only available at Food Lion.

35. Food Lion offers certain high-quality products, including its store brands, that are only available for purchase at a Food Lion.

36. Plaintiff is attracted to Food Lion because of the diversity and quality of its product selection.

37. Food Lion often has prices for certain items that are below the prices offered by their competitors and Plaintiff is attracted to Food Lion because of these deals.

38. However, among other issues, the details of the deals Defendant offers to its customers via foodlion.com are not fully accessible to persons with visual impairments such as Plaintiff who rely on assistive technology to navigate the web.

39. Specifically, to comprehend the information that is visually displayed on websites, Plaintiff uses "screen reader" software (e.g. JAWS) which translates the raw information of a webpage into synthesized speech.

40. Plaintiff has attempted to utilize Defendants' website using his laptop computer keyboard

(which is necessary because a blind person cannot visually navigate and filter through the content on a website using a mouse or trackpad) in conjunction with a screen reader software program (which translates the raw information of a webpage into synthesized speech).

41. Plaintiff continues to desire to utilize Defendant's website for informing his purchasing decisions and meeting grocery needs, but he is unable to independently do so since some features of the inadequately designed website are effectively unnavigable to him due to his disability.

42. On information and belief, Defendant or its agents charged with designing and managing foodlion.com did not adequately test the features of the foodlion.com website with screen reader software before launching it to the general public.

43. On information and belief, Defendant has not adopted and/or has neglected to follow an appropriate Web Accessibility Policy to help ensure that individuals with disabilities enjoy full and equal access to the goods and services provided by the website.

44. On information and belief, the Defendant has not instituted a Web Accessibility Committee whose objective is to help ensure full and equal use of its website by individuals with disabilities.

45. On information and belief, the Defendant has not designated an employee or third-party consultant to act as a Web Accessibility Coordinator to help ensure that individuals with disabilities have full and equal use of its website.

46. On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of its website by individuals with disabilities.

47. Defendant's website does not fully meet the Web Content Accessibility Guidelines ("WCAG") basic level of web accessibility.

48. Thus, Plaintiff will continue to suffer irreparable injury from the Defendant's acts, policies, and practices set forth herein unless enjoined by this Court.

### COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

49. The foregoing paragraphs are realleged and incorporated by reference.

50. As a result of the barriers to access the foodlion.com website imposes upon Plaintiff and others similarly situated (when the removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that are made available to the general public on the website at foodlion.com. This is a violation of Title III of the ADA (42 U.S.C. §12101 et. seq., 42 U.S.C. §12182 et. seq.).

51. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i)).

52. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

    a. "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or

accommodation being offered or would result in an undue burden." (42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

53. Defendant's website is subject to regulation under Title III of the ADA because it has a "nexus" with Defendant's physical locations, which are places of public accommodation under 42 U.S.C. §12181.

54. Alternatively, pursuant to 42 U.S.C. §12181(7)(E), foodlion.com is itself a place of public accommodation under the ADA because it permits, facilitates, and improves access for members of general public to the goods and services Defendant provide. As such, like Defendant's physical stores/locations, the design and functionality of the foodlion.com website must also comply with the broad accessibility mandate of the ADA.

55. However, the Defendant's website is not in compliance with the ADA.

56. Specifically, the Defendant's website is riddled with several accessibility barriers including, but not limited to, the following.

   a. Certain information, including links and auto-generated messages, is not read by a screen reader and is therefore not "perceivable."

   b. Certain information, when read by a screen reader, is confusing and not understandable.

   c. Certain "pop up" information and "modal dialog" boxes are inaccessible.

   d. For certain features of the website, such as a form text entry box with underlying validation criteria, when an error message is generated automatically by the website, no information which explains the source of that error is automatically provided via readable text.

   e. The manner in which Plaintiff and others similarly situated must access special pricing information is inordinately cumbersome when compared to the way the same

11

information that is made available to sighted users that can use a mouse.

57. Due to, but not limited to, the above, initiating and successfully using major parts of the Food Lion website via a screen reader and a keyboard can be virtually impossible for a blind person.

58. Additionally, in some instances, frustrating accessibility issues would prevent blind users from being able to access the benefits and information that Food Lion offers to the general public on its website.

59. The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these and other access barriers. Removal of the barriers is readily achievable, may be carried out without much difficulty or expense, and would not fundamentally alter the nature of Food Lion's offerings.

60. The Defendant has therefore violated Title III of the ADA (and continues to do so) by leaving in place an inadequate website design which burdens and impedes Plaintiff and other blind individuals who rely upon screen reader software from accessing the goods, services, and other privileges offered to the general public at foodlion.com.

61. Plaintiff is a member of a protected class of persons under the ADA because he is blind, and he has been, and will be in the absence of an injunction, injured by Defendant's failure to provide its online content and services in a manner accessible with prevailing screen reader programs.

62. Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 as a remedy to Defendant's conduct, including an order that:
    a. requires Defendant to adopt and implement a web accessibility policy to help ensure that persons with disabilities have full and equal enjoyment of the services, facilities,

12

Case 1:20-cv-00577-LCB-JLW   Document 1   Filed 06/24/20   Page 12 of 14

privileges, advantages, and accommodations made available through its website; and

  b. requires Defendant to adopt internal policies and actually implement web design and programming modifications that are targeted at making its website equally accessible to persons with disabilities, including persons with visual impairments.

63. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and he is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant.

64. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

WHEREFORE, Plaintiff hereby requests the following relief:

a. A jury trial;

b. A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 et seq., and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its website is fully and equally accessible to, and independently usable by, blind and visually-impaired individuals;

c. A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 et seq., with respect to its website, foodlion.com;

d. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

e. For prejudgment interest to the extent permitted by law;

f. For costs of suit; and

g. For such other and further relief as this Court deems just and proper.

13

Case 1:20-cv-00577-LCB-JLW   Document 1   Filed 06/24/20   Page 13 of 14

This the 24th day of June 2020.

                                  **MAGINNIS LAW, PLLC**
*Counsel for Plaintiff*

BY: /s/ *Garrett L. Davis*
EDWARD H. MAGINNIS
N.C. State Bar No. 39317
GARRETT L. DAVIS
N.C. State Bar No. 52605
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919.526.0450
Fax: 919.882.8763
emaginnis@maginnislaw.com
gdavis@maginnislaw.com

14

Case 1:20-cv-00577-LCB-JLW   Document 1   Filed 06/24/20   Page 14 of 14